IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


**ROBERT T. JOHNSON, SR.,**

        **Plaintiff,**

      v.                      CASE NO.  09-3063-SAC

**J.L. GILCHRIST,
et al.,**

        **Defendants.**


<u>**MEMORANDUM AND ORDER**</u>

This civil rights complaint, 42 U.S.C. § 1983, was filed by an inmate of the Jackson County Jail, Holton, Kansas (JCJ). Plaintiff claims he has been subjected to cruel and unusual punishment and that his civil liberties have been violated at the jail. He names as defendants "Jackson County Jail"; J.L. Gilchrist, Director of the jail; and jail employees including Corporal Johnson, Officer Burke, C.O. Gouge,[1] C.O. Spiker, and Corporal Kevin Shea.

As the factual background for his complaint, Mr. Johnson alleges the following. On February 18, 2009, he was arrested and placed in the JCJ. On February 27, 2009, he had five teeth pulled and was placed on "med lock down for a time allowing his gums to heal." He also has "hepititus (sic) B & C" for which he was prescribed a narcotic drug that caused "serious drowsiness." On February 28, 2009, he was let out of his cell to get a cup of coffee and was attacked by another inmate. He alleges the attack was unprovoked and he was punched in the mouth, which was already full

---

[1] Plaintiff added defendants Gouge, Striker and Shea in amendments to his complaint (Docs. 4, 7). He has also amended to correct the spelling of Gilchrist's name (Doc. 7).

of gauze and blood from his dental surgery.

**CLAIMS AND RELIEF REQUESTED**

As count one of his complaint, Mr. Johnson claims his civil liberties were violated in that defendants failed to prevent the attack by securing the inmate who attacked him. He claims defendants knew plaintiff was in an unsafe environment and could have prevented the "lapse in security."

As count two, plaintiff claims he was subjected to cruel and unusual punishment. In support, he alleges that after the assault he was taken to ER where he received ten stitches in his lips, and that two teeth were broken and need to be pulled. He further alleges that the "ER doctor" prescribed medication for pain until he could be treated by a dentist, but defendants denied the medicine.

As his third count[2], plaintiff claims he has been denied access to the courts, and alleges in support that he has been informed he will be provided no more copies of "legal matters."

He claims that defendants have caused him "severe pain, suffering, physical and mental anguish[3]," and put his life and

---

[2] Plaintiff includes another count, but it is not an additional claim of a constitutional violation with supporting facts. It is merely his request that "charges be brought" against defendants "under the U.S. Constitution & state & local laws." This is a request for specific relief, not another claim. This court has no authority to initiate federal criminal charges against defendants. That authority belongs to federal prosecutors. Nor does this court have any authority to initial state or local charges. Accordingly, this request for relief is denied.

[3] To the extent plaintiff seeks damages from any defendant for mental anguish, he must first show prior physical injury. See 42 U.S.C. § 1997e(e)("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury").
In addition, plaintiff is required to exhaust all available administrative remedies prior to bringing a federal civil rights complaint. He alleges he has filed "as many as 14 grievances" regarding his alleged inhumane treatment and denial of medical treatment, and all were denied by Director Gilchrist. He does not allege that he has fully exhausted all available administrative remedies in

liberties in jeopardy.  He seeks a jury trial for "collateral" and punitive damages.

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

Plaintiff has filed a motion for leave to proceed in forma pauperis (Doc. 2), and has supplemented it with an Inmate Account Statement (Doc. 5) in support as statutorily mandated.  Section 1915(b)(1) of 28 U.S.C., requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.  Having examined the records provided of plaintiff's account, the court finds the average monthly deposit to plaintiff's account is $67.28 and the average monthly balance is less.  The court therefore assesses an initial partial filing fee of $13.00, twenty percent of the average monthly deposit, rounded to the lower half dollar[4].  Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court.  His failure to submit the initial fee in the time allotted may result in dismissal of this action without further notice.

**MOTION FOR ORDER**

---

an orderly fashion on all his claims.  This issue may eventually be raised as an affirmative defense.  Thus, plaintiff would be well-advised to fully exhaust available administrative remedies on all his claims.

[4]   Pursuant to 28 U.S.C. § 1915(b)(1), plaintiff will be obligated to pay the remainder of the full $350.00 district court filing fee in this civil action.  Being granted leave to proceed in forma pauperis entitles him to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2).

Plaintiff has filed a "Motion Requesting Court Prevent Retalitory (sic) Punishment in Excess" (Doc. 3). This motion is frivolous, and shall be denied. Plaintiff is cautioned that he will only impede his own case by filing unnecessary and unsupported motions. In this motion, plaintiff requests "an order stop any retalitory (sic) punishment that would in fact harm defendant any way for exercising his constitutional rights." He also states that he "must be granted access to court [photo copies]." No factual basis is alleged showing any retaliatory action by defendants. No legal basis is alleged for the court to issue an order preventing actions that are not alleged to have occurred or to be continuing. See Green v. Johnson, 977 F.2d 1383, 1388 (10th Cir. 1992). Plaintiff's denial of access to the court claim based upon refusal to provide copies is a count in his complaint screened later herein. His mention of it in this motion warrants no immediate court action.

**MOTIONS TO AMEND COMPLAINT**

Plaintiff has filed a pleading he entitles "Motion to Amend 42 U.S.C. § 1983," (Doc. 4) in which he requests "permission to amend his civil action." He does not attach a complete new Amended Complaint upon forms provided by the court, which sets forth all his claims and fact allegations from the original complaint along with the desired amendment(s). Instead, he simply lists two defendants and other items he wishes to "add" to his original complaint. Plaintiff has not followed the proper procedure for amending a

4

complaint[5]. He has also filed a "Second Motion to Amend Pursuant to 42 U.S.C. § 1983," that does not have a Second Amended Complaint attached. In this motion, he seeks to "add" defendant Gilchrist to the count of the complaint alleging denial of access, and has attached exhibits of communications with Gilchrist. The spelling of Gilchrist's name is corrected in this amendment.

Although pro se pleadings are to be liberally construed, pro se litigants are still expected to follow the same rules of procedure as all other litigants. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Brown v. Zavaras, 63 F.3d 967, 971-72 (10th Cir. 1995); Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992), cert. denied, 507 U.S. 940 (1993). Since plaintiff proceeds pro se, the court will liberally construe these two motions to amend to incorporate, rather than supplant, his original complaint. However, plaintiff is on notice that any additional amendments must be by proper motion that has a complete Amended Complaint attached, which is on forms acquired from the clerk of this court and sets forth all plaintiff's claims and information intended to be in his complaint[6].

Plaintiff's first motion to amend (Doc. 4) will be granted only in part, and even though it too is an unnecessary motion. "A party may amend its pleading once as a matter of course . . . before being

---

[5] In order to add defendants or claims to a complaint that were not in the original complaint, a plaintiff must file an Amended Complaint. See Fed.R.Civ.P. Rule 15. Ordinarily, an Amended Complaint completely supercedes the original complaint, and therefore must contain all claims the plaintiff intends to pursue in the action including those raised in the original complaint. Any claims not included in the Amended Complaint shall not be considered. Plaintiff may not in the future amend his complaint by filing a motion or other paper in which he simple alleges the additional claims or lists additional defendants.

[6] In the event that plaintiff files a Third Amended Complaint, any prior complaints will not be considered further, and only the most recent Amended Complaint will be before the court.

5

served with a responsive pleading . . . ." Fed.R.Civ.P. Rule 15(A). Accordingly, C.O. Gouge, C.O. Spiker, and Corporal Kevin Shea are added as defendants, and plaintiff's allegations regarding these defendants are added. The court has also added plaintiff's request for "collateral" and punitive damages.

The court denies the part of this motion that seeks to include plaintiff's "proposed partial witness list" and "first discovery request" as amendments to his complaint. Plaintiff provides no legal or factual basis for making his discovery requests part of his complaint. Generally, discovery matters in civil cases are determined around a scheduling conference or order after the screening of the complaint and service of process have been completed. Thus, even if the court liberally construed this part of plaintiff's Motion to Amend Complaint as a discovery motion instead, it would be dismissed as premature and unduly burdensome at this preliminary stage of the litigation.

Plaintiff's second motion to amend (Doc. 7) is granted. The court repeats that no further amendments will be allowed that do not comply with federal civil and local court rules[5].

**SCREENING**

Because Mr. Johnson is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any

---

[5] With the second motion to amend, the clerk received correspondence from plaintiff in which he complains that defendant Gilchrist is "opening, scaning (sic), copying, forwarding confidential trial statigy (sic) information to the county attorney and whomever else he might feel the need." This is not presented in the form of a motion to amend; and in any event, a claim that legal mail was mishandled does not relate to plaintiff's claim in this case of failure to protect so as to be properly joined herein. The court cautions plaintiff that any discovery or legal mail problems he has that he believes is negatively impacting his defense in a criminal case must be presented in the criminal case.

6

portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).  Having screened all materials filed, the court finds the complaint, as amended, is subject to being dismissed for reasons that follow.

At the outset, the court finds that the "Jackson County Jail" is not a proper defendant because that facility is not a "person" that can be sued under § 1983.  Accordingly, this action shall be dismissed as against this defendant.

**FAILURE TO PROTECT CLAIM**

As factual support for his claim of failure to protect, plaintiff alleges his attacker was moved to C-pod from D-pod because of his volatile state of mind, and had been crying loudly all night, smashing his cell window, screaming "I'm going to kill them son bitches," and was "known/diagnosed for" paranoia and bi-polar blackouts[6].  He also alleges that he was on medical lockdown on medication that impaired his reasoning, and was "allowed out into a (sic) unsecured inviroment (sic)."  Plaintiff states that defendants Johnson, Burke, and the Director "could have prevented" the assault, and that "evidence will show" Director Gilchrist "knew full well the unsafe environment."  In his first motion to amend, plaintiff adds the statement that defendant Gouge "was officer in charge and responsible for placing" him in a dangerous and hostile environment.

---

[6] Plaintiff's discovery requests improperly imbedded in his Motion to Amend Complaint (Doc. 4) suggest he believes this inmate previously attacked another inmate.  The court does not consider this discovery request as additional facts made in support of this claim.  Plaintiff is herein given the opportunity to supplement his complaint with additional supporting facts, and thus may present any facts he may have regarding prior incidents of violence by his assailant.

7

He also adds that defendant Spiker "showed no concern" to protect him, did not perform her duties in a professional manner, and refused to take pictures of his face immediately after the attack.

To recover under § 1983, plaintiff must show a deprivation of rights secured by the Constitution and laws of the United States. Rizzo v. Goode, 423 U.S. at 370-71.  The Supreme Court has made clear that prison and jail officials have a duty to ensure the safety and protection of inmates:

> [P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. . . . Having incarcerated persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.  Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency.

Farmer v. Brennan, 511 U.S. 825, 833-34 (1994)(internal quotation marks and citations omitted); Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer, 511 U.S. at 834.  A prison official may be held to have violated the Eighth Amendment only when two components are satisfied: an objective component requiring the inmate show he was "incarcerated under conditions posing a substantial risk of serious harm"; and a subjective component requiring that defendants acted with the culpable state of mind referred to as "deliberate indifference." Id.; Wilson v. Seiter, 501 U.S. 294, 299 (1991).  Deliberate indifference exists when an official "knows of and disregards an

8

excessive risk to inmate health or safety." Farmer, 511 U.S. at 837 ("[T]the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); Gonzales v. Martinez, 403 F.3d 1179, 1186 (10th Cir.), cert. denied, 546 U.S. 1003 (2005). Deliberate indifference requires "a higher degree of fault than negligence." Hovater v. Robinson, 1 F.3d 1063, 1066 (10th Cir. 1993)(other citations omitted); Farmer, 511 U.S. at 835. A prison official's "failure to alleviate a significant risk that he should have perceived but did not" does not amount to the infliction of cruel and unusual punishment. Id.

It follows that plaintiff must allege facts indicating defendants actually knew of but disregarded a serious risk to him, rather than that they should have been aware of possible danger. Id. The mere fact that an assault occurred does not establish the requisite deliberate indifference to plaintiff's constitutional rights. Hovater, 1 F.3d at 1068. Nor does an isolated attack by another inmate demonstrate a failure to protect.

The court finds that plaintiff does not allege sufficient facts to transform his claim, which appears at most to suggest negligent conduct[7], to one of constitutional dimension. He alleges the defendants' "failure to protect" him from assault by another inmate only in general, conclusory terms. His allegations that his attacker had been yelling and smashing his cell window, was volatile, and had been diagnosed with paranoia and bi-polar

---

[7] A claim of simple negligence must be brought in state rather than federal court as it is not an adequate basis for claiming cruel and unusual punishment under the Eighth Amendment.

9

blackouts, do not show that any defendant was actually aware of a risk to plaintiff from this inmate.  Mr. Johnson does not describe any action a named defendant should have, but did not take, prior to or in response to the attack[8].  His claims that Gilchrist and all defendants "knew" the environment was unsafe and "could have prevented" the assault are completely conclusory.  He does not describe any conditions posing a substantial risk of serious harm or allege facts showing he made any defendant aware of particular threats, which he or she then ignored.  Nor does he describe a particular policy or training lacking at the jail, which could have prevented the assault.  It follows that plaintiff does not allege sufficient facts to state a federal constitutional claim.

Moreover, plaintiff does not allege facts demonstrating personal participation by each and every named defendant in the alleged failure to protect.  In order to establish a cognizable claim under § 1983, a plaintiff must demonstrate that defendants deprived him of a federally protected right and that each defendant was personally involved in the deprivation.  Plaintiff's allegations suggest personal involvement in this incident by defendant Gouge only, and even that is without factual detail as to Gouge's actions before and during the assault.  Plaintiff does not allege what individual let him and the other inmate out of their cells at the same time, and facts showing that individual was aware plaintiff was in danger from the other inmate. Defendant Gilchrist is not liable for the inmate assault solely because of his

---

[8] Plaintiff's allegations regarding defendant Spiker's role are completely conclusory, save for the one that she refused to immediately take pictures.  Since pictures were taken at the ER, no injury from this inaction is shown.

10

supervisory capacity at the jail[9]. A supervisor may be found liable under § 1983 only on the basis of his or her own acts or omissions.

Plaintiff will be given time to file a "Supplement to Complaint" alleging additional facts to support a constitutional claim of failure to protect and including facts describing the personal acts or inactions of each and every named defendant that resulted in this incident. If he fails to comply or allege sufficient additional facts to state a claim and show personal participation by any of the defendants, this claim may be dismissed without further notice against all or some defendants.

**DENIAL OF MEDICAL TREATMENT CLAIM**

As factual support for his claim of inhumane treatment, plaintiff alleges that after the assault, he was taken to the ER, where Dr. Kobert took pictures of his injuries and prescribed medication. He further alleges that Dr. Kobert informed "Jackson County staff" that plaintiff's mouth was full of abscess, and the medication was to "make the pain more tolerable" until "you get him to" a dentist to remove all the fractured bones from his gums. Plaintiff alleges he "went 3 days without prescribed med." He states that "all" defendants denied him the prescribed meds, denied his request to call their superior, denied salt and ice packs as prescribed, refused to feed him, and "only gave portion of"

---

[9] A supervisor's liability may not be predicated solely upon a theory of respondeat superior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Gagan v. Norton, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), cert. denied, 513 U.S. 1183 (1995). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008). To be held liable under § 1983, a supervisor must have personally participated or acquiesced in the complained-of constitutional deprivation. Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988).

prescribed antibiotic.  He also states Director Gilchrist "knew the lack of med assistance being provided" and "knew Dr. orders were not followed."  He additionally alleges that defendant Spiker "denied medication as was prescribed" by Dr. Kobert.  He claims all defendants caused him "great pain and suffering."

The United States Supreme Court has held that an inmate asserting a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference" standard again applies with its two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." Miller v. Glanz, 948 F.2d 1562, 1569 (10th Cir. 1991); Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005).  In the objective analysis, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury."  Estelle, 429 U.S. at 104, 105; Farmer v. Brennan, 511 U.S. 825, 834 (1994).

In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Martinez, 430 F.3d at 1305 (citing Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996).  It follows that an inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind." Estelle, 429 U.S. at 106; Wilson v. Seiter, 501 U.S. 294, 297 (1991).  Moreover, a mere difference of opinion over the

adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim. El'Amin v. Pearce, 750 F.2d 829, 833 (10th Cir. 1984); Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976). As the United States Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

Estelle, 429 U.S. at 105-106 (footnote omitted). The prisoner's right is to medical care, not to the type or scope of medical care he personally desires.

In the instant action, Mr. Johnson's allegations and exhibits indicate he was furnished immediate medical attention, but pain medication was delayed for three days[10]. In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires that the inmate suffer "substantial harm" as a result of the delay. Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001); Olson v. Stotts, 9 F.3d 1475 (10th Cir. 1993).

The court finds that plaintiff has failed to state sufficient facts to support a claim of unconstitutional denial of medical treatment. He will be given time to supplement his complaint with additional facts sufficient to state a claim. Those facts must include a description of the acts or inactions of each defendant

---

[10] Plaintiff does not allege on what date or dates he requested prescribed salt and ice packs, additional antibiotic, and food; or for how long these items were denied. Nor does he allege to what person he directed his requests. Without these essential facts, defendants may not be held personally liable for money damages.

showing he or she was personally involved in the alleged denials. The denial of grievances by a jail administrator without more, does not sufficiently implicate the administrator under § 1983.

**DENIAL OF ACCESS CLAIM**

Plaintiff claims he has been denied access to the courts by defendants C.O. Burke, Kevin Shea, and J.L. Gilchrist. In support, he alleges they have informed him he will be provided no more copies of "legal matters," and that Shea provided him with one "copy of criminal motion" and said "No more, don't ask."

It is well-established that a prison inmate has a constitutional right of access to the courts. However, to state a claim of denial of that right, the inmate must allege something more than that jail officials have refused to provide free copies of legal documents. To show denial of court access, an inmate must "go one step further and demonstrate that the alleged shortcomings . . . . hindered his efforts to pursue a legal claim," causing him "actual injury." Lewis v. Casey, 518 U.S. 343, 348, 350 (1996). He may do so by alleging actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated or impeded. Id. at 350, 353.

A jail inmate has no federal constitutional right to machine-generated copies. This court accepts hand-written copies. It follows that plaintiff's claim of being denied copy services at the jail, without more, does not state a claim of denial of court access. Furthermore, plaintiff has not alleged any facts whatsoever

14

showing the requisite actual injury to a pending, non-frivolous lawsuit.

Moreover, a jail's provision of legal assistance or a law library to inmates is merely "one constitutionally acceptable method to assure meaningful access to the courts."  Id. at 351, *citing* Bounds v. Smith, 430 U.S. 817, 830 (1977).  An inmate with access to counsel provided in a pending action, is not entitled to additional means of access.

Plaintiff will be given time to state additional facts showing actual injury.  Furthermore, as with his other claims, he is required to allege facts showing personal participation in the alleged denial of access by each defendant; and a jail supervisor is not liable under § 1983 based solely upon his supervisory capacity.

For the foregoing reasons, the court concludes that plaintiff has failed to allege sufficient facts to support a claim of federal constitutional violation.  He shall be given time to supplement his complaint with additional facts.  This action may be dismissed without further notice if plaintiff fails to comply.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 13.00.  Any objection to this order must be filed on or before the date payment is due.  The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff is required to supplement his complaint with additional facts or show cause why this action should not be dismissed for failure to allege facts in support of a federal constitutional

violation.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief is denied as against defendant "Jackson County Jail."

**IT IS FURTHER ORDERED** that plaintiff's Motion Requesting Court Prevent Retalitory (sic) Punishment (Doc. 3) is denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Amend (Doc. 4) is granted in part to add C.O. Gouge, C.O. Spiker, and Corporal Kevin Shea, employees at the Jackson County Jail, as defendants herein, and to correct the spelling of defendant J.L. Gilcrest's name to J.L. Gilchrist; and denied in part as specified herein.

**IT IS FURTHER ORDERED** that plaintiff's second motion to amend (Doc. 7) is granted.

**IT IS SO ORDERED**.

Dated this 16th day of April, 2009, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge