```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

**ROBERT T. JOHNSON, SR.,**

        **Plaintiff,**

        v.                              **CASE NO.  09-3063-SAC**

**J.L. GILCHRIST,**
**et al.,**

        **Defendants.**

### O R D E R

This court entered a Memorandum and Order in this case, upon screening, in which it found this civil rights complaint, as twice amended, was subject to being dismissed for failure to allege facts in support of a federal constitutional violation.  Plaintiff was given time to supplement his complaint with additional facts or show cause why this action should not be dismissed.  He was also assessed an initial partial filing fee, which he has paid. Accordingly, his motion for leave to proceed in forma pauperis shall be granted.

Rather than filing either a supplement or a response showing cause as directed, plaintiff filed a "Final Amendment" (Doc. 9).  He did not file this amended complaint upon forms provided by the court as required by local rule, and as a result, it contains several formal deficiencies.  He did not name the defendants in the caption of his complaint, but simply put "defendant" and a number in the margin beside a person's name

elsewhere in the complaint.  He submitted his "Final Amendment" complaint without a Motion to Amend seeking permission.  While he was entitled to amend once as of right, he was required to seek leave of court to file any further amendments.  He was informed in the court's prior Order that "any additional amendments must be by proper motion that has a complete Amended Complaint attached" that "is on forms acquired from the clerk of the court."  Nevertheless, the court shall grant plaintiff's third Motion to Amend (Doc. 9), and liberally construe Document 9 as plaintiff's Third Amended Complaint.  All prior complaints filed by plaintiff are completely superceded by his Third Amended Complaint (Doc. 4), and will no longer be considered herein.  Plaintiff has also submitted a letter to the clerk with a "Jackson County Detention Center Incident Report" attached, which was filed as a "Supplement" (Doc. 10). Having considered these filings, the court finds as follows.

The court is required to screen plaintiff's Third Amended Complaint[1].  The persons designated as defendants in the complaint are J.L. Gilchrist, Director of Jackson County Detention Center (JCDC), and other JCDC employees: Correctional Officer (CO) Gouge, CO Spiker, CO Higgins, Corporal Johnson, and CO Buck.  All defendants previously named that are not named as defendant in plaintiff's Third Amended Complaint are dismissed from this action.

---

[1] Because Mr. Johnson is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).

2

**FACTUAL BACKGROUND**

The following factual background is alleged in the Third Amended Complaint. Plaintiff was arrested on February 18, 2009, and placed in the JCDC. On February 26, 2009, he had five teeth surgically removed, was heavily sedated, and was placed in C-pod for "medical observation lockdown". The next day another inmate was moved to C-pod at his own request. On February 28, 2009, plaintiff was let out of his cell and went to the microwave to heat water. Plaintiff was not out of his cell for two minutes when the other inmate blamed plaintiff for the malfunction of his remote control. Plaintiff denied the accusation, but the other inmate physically attacked him, "smashing plaintiff's lips and knocking 2 teeth loose 'breaking them causing removal'." The attack was unprovoked. Sheriff's Officers were called in to help defendant C.O. Gouge quell the incident. Paramedics were called, and Mr. Johnson was taken "to E.R. Holton Community Hospital, where he was diagnosed, treated", medication and treatment were prescribed, and pictures of his injuries were taken. Unspecified medication, prescribed to help plaintiff tolerate pain until he could be seen by a dentist, was denied for four days.

**CLAIMS & REQUESTED RELIEF**

Plaintiff claims defendants failed to protect him from the assault, subjected him to cruel and unusual punishment, and denied him medical treatment in violation of his rights under the Eighth

3

Amendment to the United States Constitution.  He seeks punitive and collatoral (sic) damages for denial of constitutional rights, pain and suffering, and permanent disfigurement[2].

**FAILURE TO PROTECT CLAIM**

In his Third Amended Complaint, Mr. Johnson asserts that defendant Gilchrist is liable for plaintiff's injuries because he placed CO Gouge in charge of jail operations on the day of the assault, when Gouge was a "rookie correctional officer" who lacked training and experience.  Plaintiff alleges he was unable to see who was "in the control bubble" at the time the door to his cell was opened, but that defendants Higgins and Gouge "worked the first shift" on the day of the assault.  He also alleges that defendant Gouge let him out of his cell to get hot water just before the attack, "ignored all the signs," lacked diligence, and had a lackadaisical attitude.  Johnson claims the assault and his injury were also "caused by (a) lack of training and experience" on the parts of defendants Johnson, Spiker, and Burk.

Plaintiff utterly fails to allege any facts showing that the assault upon him by another inmate was the result of a lack of training or experience.  His bald statements that defendants lacked experience and training do not constitute facts.  He does not suggest what training should have been provided that was not, or how additional training would have resulted in a different outcome.

---

[2] Plaintiff claims "permanent disfigurement", but does not describe this alleged injury or how it resulted from the assault.

4

Nor does he describe any different action that would have been taken by a more experienced officer. He merely intimates that defendants should have known before the attack not to let him out into a common area at the same time as his attacker. However, he does not allege sufficient facts showing the attacker was known to constitute a threat to plaintiff such as that he felt threatened prior to the assault, or that he made any defendant aware of threats from this inmate, which were ignored. In short, plaintiff still fails to allege additional facts sufficient to transform his claim, which the court found suggested negligent conduct[3] at most, to one of federal constitutional dimension.

       In his Third Amended Complaint, plaintiff alleges that the inmate who assaulted him "suffered from parinoid (sic), Bipolar Blackouts", had attacked another inmate, had threatened staff "causing restraintive (sic) measures", and his "volitile (sic) mood swings were well documented". He also alleges that the other inmate was crying, screaming, carrying on, and saying he was "going to kill them son-bitches" during the night before the attack. Plaintiff further alleges that C-pod was being used only for "lock down, high security inmates" and medical observation inmates, both of which were "to be monitored and treated with caution."

       The allegations describing plaintiff's attacker are no different than those alleged in plaintiff's prior complaints, which

---

[3] Plaintiff was advised that a claim of simple negligence must be brought in state rather than federal court and is not an adequate basis for a claim of cruel and unusual punishment.

5

the court found insufficient to support a constitutional claim of failure to protect.  Plaintiff again fails to provide sufficient details such as date and location of any prior violent attack by the other inmate.  Nor does he allege additional facts showing that the mental condition of this inmate and his behavior the night before the assault must have led defendants to infer that plaintiff was "incarcerated under conditions posing a substantial risk of serious harm" to him.  Unfortunately, the behavior of the other inmate the day before and of the assault does not suggest plaintiff was confined under conditions beyond those regularly faced by incarcerated persons[4], especially in jails.  In sum, plaintiff still fails to show that any defendant was aware of facts from which they could have drawn and actually did draw the inference that a substantial risk of serious harm to plaintiff existed.

Plaintiff's allegations and his exhibit of the "Incident Report", do not show deliberate indifference on the part of defendants.  Instead, they indicate that defendants acted promptly and effectively to stop the attack.  Plaintiff alleges the incident occurred less than two minutes after he left his cell, when defendant Spiker heard yelling in C-pod she radioed Control, within two minutes Control radioed "for all officers to go to C-pod", and that defendant Gouge quickly subdued plaintiff's attacker with a taser.  Johnson's own allegations also indicate C-pod was being

---

[4] In its previous Order, this court quoted the U.S. Supreme Court's observation that prisoners are incarcerated with persons who have "demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct." Farmer v. Brennan, 511 U.S. 825, 833-34 (1994).

6

monitored from a control bubble, and that the fight was observed from the time it began. Plaintiff presents no allegations whatsoever indicating what could have been done earlier by any defendant other than to have actually foreseen the assault and not have let plaintiff out of his cell. As the court previously stated, the mere fact that an assault occurred does not establish the requisite deliberate indifference to plaintiff's constitutional rights. Nor does an isolated attack by another inmate demonstrate a failure to protect.

**DENIAL OF MEDICAL TREATMENT CLAIM**

In his Third Amended Complaint, plaintiff claims defendant Spiker was handed his prescription with instructions from Dr. Robert, but she "refused Dr. Roberts' instruction" and denied plaintiff "his medicine causing serious pain and suffering." He states this medicine was prescribed to help him tolerate the pain until he could get back to his dentist and have bone fragments removed from his gums and the teeth removed that were broken in the attack. He also repeats his allegation that defendant Spiker refused to take pictures right after the attack, even though it was rejected in the court's prior Memorandum and Order. Plaintiff adds that defendant Spiker tried to prevent pictures from being taken at the hospital. The court repeats that pictures of plaintiff's injuries were taken, and no federal constitutional claim of denial of medical treatment is presented. All other allegations plaintiff

7

makes with regard to defendant Spiker, such as that she lacked compassion and caused him to suffer great pain, are completely conclusory.

Plaintiff alleges that defendants Spiker, Johnson, and Buck[5] lacked the training and experience to provide medical care to any inmate at the JCDC, and were not qualified to "secondguess" the diagnosis of a doctor.  However, he does not allege facts showing they attempted to secondguess a doctor's diagnosis.  His allegations and exhibits, as opposed to his conclusory statements, indicate he was furnished medical attention and treatment immediately following the assault, but pain medication or further treatment was delayed for two to four days.  He was assaulted on June 28 "at approximately 1430."  He was taken to a hospital emergency room where he was treated that day.  He alleges that on March 1, or after two days, defendants Buck and Johnson brought salt and ice packs to him.  Thus, as the court found in its prior Memorandum and Order, plaintiff alleges a delay in receiving medical treatment.  As plaintiff was previously advised, in situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires that the inmate suffer "substantial harm" as a result of the delay.  <u>Garrett v. Stratman</u>, 254 F.3d 946, 950 (10th Cir. 2001); <u>Olson v. Stotts</u>, 9 F.3d 1475 (10th Cir. 1993).  He was given the opportunity to allege

---

[5] Plaintiff alleges that defendants Johnson and Buck "were serving as officers in charge of shifts" from the day of the assault through March 3, 2009. He claims they denied medical treatment prescribed by Dr. Robert and his dentist, Dr. Herman.

8

additional facts to show his claim of a delay amounted to a federal constitutional violation, but has failed to allege any significant additional facts in his Third Amended Complaint.

Also as noted in the court's prior screening Order, plaintiff's allegations that paramedics were called and he was taken to a hospital emergency room where he was diagnosed and treated indicate plaintiff was provided, rather than denied, medical attention.

**CRUEL AND UNUSUAL PUNISHMENT CLAIM**

In his Third Amended Complaint, plaintiff adds allegations that defendants Johnson and Buck gave him ice and salt frozen in Ziplock bags and instructed him to rinse out his mouth with the salt water once the ice melted. He also complains that the towel they brought to rap around the ice packs was dirty. He further adds that these defendants refused to allow him to clean his cell, "which was covered in bloody slober (sic); denied him a trash can to spit in; denied him toilet paper; would not call CO Cornell; and "would do nothing except laugh."

While some of these alleged conditions may seem harsh, plaintiff still fails to describe cruel and unusual conditions of such duration that they posed a substantial risk of serious harm to him or allege facts indicating defendants actually knew of but disregarded such conditions. Id. It follows that he has not alleged sufficient facts to state a federal constitutional claim.

9

For the foregoing reasons, the court concludes that plaintiff has failed to allege sufficient facts in his Third Amended Complaint to state a claim of federal constitutional violation, and this action must be dismissed.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to File Third Amended Complaint (Doc. 9) is granted, and Doc. 9 is construed as plaintiff's Third Amended Complaint.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 2) is granted[6].

**IT IS FURTHER ORDERED** that this action is dismissed and all relief is denied for failure to state sufficient facts to support a federal constitutional claim.

The clerk is directed to transmit a copy of this Order to the financial officer at the institution where plaintiff is currently confined.

**IT IS SO ORDERED.**

Dated this 25th day of June, 2009, at Topeka, Kansas.

---

[6] Pursuant to 28 U.S.C. §1915(b)(1), plaintiff remains obligated to pay the remainder of the $350.00 district court filing fee in this civil action. Being granted leave to proceed in forma pauperis entitles him to pay the filing fee over time through payments from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2). Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is confined is directed by copy of this Order to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge
